No. _____

## UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

_____

IN RE INDEX NEWSPAPERS LLC (*dba The Stranger*)

INDEX NEWSPAPERS LLC (*dba The Stranger*),
Petitioner,

vs.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON,
Respondent.

(REAL PARTIES IN INTEREST: UNITED STATES ATTORNEY
FOR THE WESTERN DISTRICT OF WASHINGTON, KATHERINE
OLEJNIK AND MATTHEW DURAN)

_____

Writ Directed to
United States District Court for the Western District of Washington
No. 12-GJ-145 & No. 12-GJ-149

_____

## PETITION FOR A WRIT OF MANDAMUS
_____

NEIL M. FOX
Attorney for Index Newspapers LLC
Law Office of Neil Fox, PLLC
2003 Western Ave. Suite 330
Seattle WA 98121

Telephone: 206-728-5440
Fax:        206-448-2252
e-mail:     nf@neilfoxlaw.com

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

CORPORATE DISCLOSURE. . . . . . . . . . . . . . . . . . . . . . . . . . . . v

1.  RELIEF SOUGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.  ISSUES PRESENTED FOR REVIEW.. . . . . . . . . . . . . . . . . . . . 2

3.  STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . 2

4.  STANDING.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5.  STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6.  REASONS WHY THE WRIT SHOULD ISSUE. . . . . . . . . . . . . . 7

       A.  *Introduction*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       B.  *The Standard for Mandamus Review*. . . . . . . . . . . . . . 8

       C.  *The District Court's Ruling Was Clearly Erroneous*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           i.  The Right of Public Access to the Contempt Proceedings. . . . . . . . . . . . . . . . 10

           ii.  Selective Redaction is the Remedy. . . . . . . . . . 16

7.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

8.  STATEMENT OF RELATED CASES. . . . . . . . . . . . . . . . . . . . 26

9.  CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . 27

i

<u>**TABLE OF AUTHORITIES**</u>

**Page**

**Federal Cases**

*Bauman v. United States District Court*, 557 F.2d 650 (9th Cir. 1977). . .  8,9

*Butterworth v. Smith*, 494 U.S. 624 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Doe v. Reed*, 697 F.3d 1235  (9th Cir.  2012). . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Fula*, 672 F.2d 279 (2d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Grand Jury Matter*, 906 F.2d 78 (3d Cir. 1990). . . . . . . . . . . . . .  12,13

*In re Grand Jury Proceedings, CF*, No.  09-3938
(8th Cir.  2/25/10 & 3/31/10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. 570
(W.D. Wisc.  2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Grand Jury Subpoena (Susan McDougal)*, 97 F.3d 1090
(8th Cir.  1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Oliver*, 333 U.S. 257 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Rosahn*, 671 F.2d 690 (2d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Sealed Case*, 199 F.3d. 522 (D.C. 2000). . . . . . . . . . . . . . . . . . .  21,22

*In re Search Warrant Issued on October 3, 2012*, Western District of
Washington No. 12-MJ-534. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5,17,20

*In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778
(9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In the Matter of the Appearance and Testimony of a
Grand Jury Witness*, 3:09mc0004 (S.D. Iowa, 3/19/10).. . . . . . . . . . . . . . 19

*Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172
(9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Levine v. United States,* 362 U.S. 610 (1960). . . . . . . . . . . . . . . . . . . . . 13,14

*Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589 (1978). . . . . . . . . . . . . . . 11

*The Oregonian v.  United States District Court*, 920 F.2d 1462
(9th Cir.  1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,9

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986).. . . . . . . . . . . 11

*Seattle Times Co. v. United States District Court*, 845 F.2d 1513
(9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10

*United States v. Business of Custer Battlefield Museum*, 658 F.3d
1188 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,10,11

*United States v.  McDougal*, 559 F.3d 837 (8th Cir.  2009).  . . . . . . . . . . . 19

*United States v. Smith*, 123 F.3d 140 (3d Cir.  1997). . . . . . . . . . . . . . . . . 23

*United States v. Smyth*, 104 F. Supp. 283 (N.D. Cal. 1952). . . . . . . . . . . . 11

*United States v.  United States District Court*, 694 F.3d 1051
(9th Cir.  2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes**

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Court Rules

D.C. District Local Criminal Rule 6.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Civ. P. 59(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Crim. P. 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

F.R.A.P. 21. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Western District of Washington Local Civil Rule 5(g). . . . . . . . . . . . . 20,21

## Constitutional Provisions

U.S. Const. amend. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const. amend. 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S. Const. amend. 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## *Other*

J. Slattery, "America's Pussy Riot," *Al Jazeera*, Oct. 19, 2012. . . . . . . . . 14

## **CORPORATE DISCLOSURE**

Index Newspapers LLC is a Washington limited liability company, duly organized and validly existing in the State of Washington.  Index Newspapers LLC has two members: Quarterfold, Inc., an Illinois corporation, and Loaded-For-Bear Publishing Co., a Washington corporation.  Neither Quarterfold nor LFB is a public company, and the shareholders of Quarterfold and LFB are all natural persons

Index Newspapers LLC, dba *The Stranger*, by and through its attorney, Neil M. Fox, a cooperating attorney with the National Lawyers Guild, seeks a writ of mandamus directed to the United States District Court for the Western District of Washington.

## 1.    RELIEF SOUGHT

Petitioner, Index Newspapers LLC, dba *The Stranger*, requests that this Court issue a writ of mandamus ordering the United States District Court for the Western District of Washington to unseal to the public the portions of the grand jury contempt files in *In re Matthew Duran*, Western District of Washington, No. 12-GJ-149, and *In re Katherine Olejnik*, Western District of Washington, No. 12-GJ-145, that do not involve matters that are protected by Fed. R. Crim. P. 6. The district court's orders denying Index Newspapers' motions below are located in Appendices A and B.

The information sought to be unsealed is of great public importance, involving a matter extensively covered in the local, national and international media, and therefore touches on the public's sacrosanct right to know.

1

## 2.    ISSUES PRESENTED FOR REVIEW

a.    Does the public have a right to access portions of a grand jury file that do not involve matters enjoined to secrecy by Fed. R. Crim. P. 6(e)?

b.    Where the district court recognized that much of the file in a grand jury recalcitrant witness case contained information that the public had the right to obtain, and in fact ordered that the petitioner be allowed access to the transcripts of portions of the contempt hearings, should the district court have unsealed the entire file and ordered the Government to select which portions of the file should then be redacted and sealed?

## 3.    STATEMENT OF JURISDICTION

This Court's jurisdiction is based on 28 U.S.C. § 1651 and F.R.A.P. 21.

## 4.    STANDING

"The press has standing to seek review by petition for writ of mandamus of orders denying access to judicial proceedings or documents." *The Oregonian v. United States District Court*, 920 F.2d 1462, 1464 (9th Cir. 1990), *citing Seattle Times Co. v. United States District Court*, 845 F.2d 1513, 1515 (9th Cir. 1988). To vindicate the right of public access to

judicial records, federal courts have traditionally granted third parties

standing to litigate access to judicial records:

> Though generally invoked by news organizations, the common
> law right of access to judicial records and documents " is a
> general right held by all persons." [Citation omitted]It has been
> invoked, for example, by those with "a proprietary interest" in a
> document, by those who need a document "as evidence in a
> lawsuit," by citizens who "desire to keep a watchful eye on the
> workings of public agencies" and by news organizations
> seeking "to publish information concerning the operation of
> government."

*United States v. Business of Custer Battlefield Museum*, 658 F.3d 1188,

1192 n.4 (9th Cir. 2011) (citations omitted).

## 5.    STATEMENT OF FACTS

Index Newspapers LLC operates several independent newspapers in

the Pacific Northwest, including *The Stranger*, a weekly paper based in

Seattle.  Beginning in the summer of 2012, a reporter for *The Stranger*,

Brendan Kiley, wrote a series of stories about a grand jury sitting in the

Western District of Washington that is investigating anarchist activities.

The grand jury's focus reportedly has been on damage caused during a May

Day demonstration in downtown Seattle on May 1, 2012 (including damage

to the William Kenzo Nakamura United States Courthouse).

Several political activists in Portland and Olympia were subpoenaed to testify before the grand jury, and in the Fall of 2012, at least four individuals refused to testify and were incarcerated as recalcitrant witnesses. Some of the witnesses filed motions to quash the subpoenas and these motions were litigated prior to the witness' appearances before the grand jury. Two of these individuals -- Katherine Olejnik and Matthew Duran -- filed recalcitrant witness appeals to this Court, but apparently the Court denied the appeals.[1] Ultimately, the district court (the Hon. Richard Jones) released Mr. Duran and Ms. Olejnik from custody on February 27, 2013. App. C. At least one other individual remains in custody.

Petitioner Index Newspapers LLC, *dba The Stranger*, filed parallel motions with the district court to unseal portions of the grand jury files related to Ms. Olejnik and Mr. Duran that did not contain matters that were covered by the secrecy requirements of Fed. R. Crim. P. 6(e). The requested materials included the transcripts from the hearings related to the motions to quash, the transcripts from the contempt hearings, briefing by the witnesses, the electronic dockets on ECF/PACER, and the pleadings related

---

[1]     The appeals are themselves sealed, so Petitioner does not know the case numbers in this Court, but believes one docket number may be No. 12-35774.

4

to the motion to unseal itself.  In support of the motions, Petitioner submitted copies of various press articles covering the proceedings, including those from both domestic and international sources.  App.  E.  One of the attorneys for witness Duran submitted a declaration recounting how members of the public were actually excluded from one of the contempt hearings.  App.  J.  The Government opposed unsealing the non-secret portions of the grand jury files, and even the briefing on the motions to unseal was placed in sealed files in the district court.  App.  F.  Both Mr.  Duran and Ms.  Olejnik filed pleadings in support of the motions to unseal.  App.  I.

At the same time that Petitioner was litigating access to the *Duran* and *Olejnik* files, Petitioner filed another motion to unseal the search warrant file in *In re Search Warrant Issued on October 3, 2012*, Western District of Washington No. 12-MJ-534.  In October 2012, the Government filed a search warrant affidavit related to searches stemming from the investigation of anarchists in the public court file.  After two press outlets published stories about this affidavit, the Government obtained an order sealing the file.  Petitioner successfully moved to unseal the search warrant file, with the district court placing the burden on the Government to propose

5

redactions.  App.  D (Magistrate's Report, Jan.  8, 2013; Order adopting report, January 30, 2013).

On February 4, 2013, in a single order issued for both the *Olejnik* and *Duran* cases, the district court granted Petitioner's motion in part and denied it in part.  App.  A.  The court allowed Petitioner to obtain transcripts of the contempt portions of the hearings, and clarified that the witness' attorneys were free to distribute their pleadings.  However, the district court denied the request to unseal the files and then have the Government selectively redact documents that related to secret materials.  The district court acknowledged in its order that unsealing, with redactions, could be accomplished, finding that the files contain:

> a mix of secret grand jury material, grand jury material that may have lost its secrecy, legal argument, banal information, and more.  *It is perhaps possible to assess every document in these files to redact secret grand jury material and divulge the remainder.*  The result would likely be an incomplete and sometimes indecipherable "court file" that would be as likely to mislead the public as to enlighten it.  Nonetheless, neither the court nor the Government has an obligation to sift through these grand jury proceedings to determine what is secret and what is not.

Order at 11 (App.  A) (emphasis added).

6

Petitioner filed a motion for reconsideration and a motion to alter or amend the judgment under local rules and Fed. R. Civ. P. 59(e).  App.  H. Petitioner argued that the Government and/or the court clerk's office should review the files and segregate or redact secret grand jury material and divulge the remainder.  App.  H.  On February 27, 2013, the district court denied Petitioner's motion.  App.  B.  Petitioner now seeks mandamus review in this Court.

### 6.    <u>REASONS WHY THE WRIT SHOULD ISSUE</u>

#### A.    *Introduction*

The district court recognized that the public has a right to access court documents and transcripts of those portions of the grand jury proceedings in a recalcitrant witness case that did not involve matters enjoined to secrecy under Fed. R. Crim. P. 6(e).[2]  The district court further found that the files at issue contained material that was not secret, and that "[i]t is perhaps possible to assess every document in these files to redact secret grand jury material and divulge the remainder."  Order at 11 (App.  A).  Yet, the district court concluded that it would be too much trouble to "sift" through

---

[2]    Pertinent portions of the rule are reproduced in the statutory appendix (App.  L).

the file and redact secret matters, and seal only the matters that were required to be sheltered from the public. Moreover, the district court concluded that somehow redactions "would be as likely to mislead the public as to enlighten it." *Id*.

This conclusion is wrong and conflicts with what other courts have done in similar situations. In fact, the district court's conclusions conflict with the order it itself issued in the parallel case, involving access to a search warrant affidavit.

Accordingly, the Court should grant the writ of mandamus and order that the files be unsealed, with appropriate redactions.

### B.    *The Standard for Mandamus Review*

As noted, this Court has given the press the right to seek mandamus review of order denying access to judicial proceedings or documents. Index Newspapers LLC, *dba The Stranger*, is an independent press weekly.

In *Bauman v. United States District Court*, 557 F.2d 650 (9th Cir. 1977), the Court delineated five factors to be evaluated in determining whether a writ of mandamus should be granted:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.

8

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal.

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an off-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

557 F.2d at 654-55.  The *Bauman* court acknowledged that although these are helpful guidelines, but they do not always result in clear distinctions, and rarely if ever will a case arise where all of the guidelines point in the same direction or even where all of the guidelines are relevant or applicable. 557 F.2d at 655.

Petitioner -- a press entity -- can easily establish the first and second factors: "[T]he press lacks standing to bring a direct appeal and, therefore, must seek review of orders denying it access to judicial proceedings or documents by petition for writ of mandamus. . . . Moreover, without immediate review, the press will face a serious injury to an important first amendment right." *Oregonian*, 920 F.2d at 1465.  "The fifth factor also weighs heavily in favor of issuance of the writ because the issue of press

access" to the contempt portions of the grand jury proceeding "is one of first impression in this circuit." *Seattle Times*, 845 F.2d at 1515.   The fourth factor weighs in favor of the writ because the district court's refusal to order selective redaction evidences a culture of secrecy and distrust for the ability of the public to understand judicial proceedings that is likely to be repeated in other grand jury proceedings.

Finally, with regard to the third factor -- whether the district court's decision is clearly erroneous as a matter of law -- the standard is whether this Court is convinced that "a definite and firm conviction that a mistake has been committed." *United States v.  United States District Court*, 694 F.3d 1051, 1057 (9th Cir.  2012).  As set out below, this factor is established as well.

### C.    *The District Court's Ruling Was Clearly Erroneous*

### I.    <u>The Right of Public Access to<br/>the Contempt Proceedings</u>

As this Court noted recently in *United States v. Business of Custer Battlefield Museum*, *supra*, there is a qualified public right of access to judicial records in criminal cases that arises under both the First Amendment and the common law.  *Business of Custer Battlefield Museum*,

10

658 F.3d at 1192, *citing Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986). To be sure, the right is qualified, and does not extend to all judicial documents that have traditionally been kept secret, such as grand jury transcripts and sealed search warrant materials in the midst of a pre-indictment investigation. *Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006).[3]

On the other hand, the secrecy requirements involving grand jury transcripts and other pre-indictment materials do not extend so far as to cut-off public scrutiny of the "ministerial" aspects of a grand jury. *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778 (9th Cir. 1982). Similarly, concerns about secrecy cannot be applied to ban those called before grand juries from discussing their own testimony, and such a ban would violate the First Amendment. *Butterworth v. Smith*, 494 U.S. 624 (1990).

---

[3]     The historic reason for the generalized secrecy surrounding grand jury investigations was to protect the grand jurors from the overreaching power of the Crown, and thus was a protection of liberty and freedom, rather than as a tool of government oppression. *See generally United States v. Smyth*, 104 F. Supp. 283, 289 & n.17 (N.D. Cal. 1952) (explaining historic roots of secrecy of grand jury as protection against the Crown during the Stuart years).

11

Thus, generalized concerns about the secrecy of grand jury proceedings do not require that contempt proceedings associated with so-called "recalcitrant witnesses" be held behind closed doors.  In *In re Oliver*, 333 U.S. 257 (1948), the Supreme Court has held unconstitutional a secret summary contempt procedure, in a grand jury-type proceeding, in Michigan:

> The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, [footnote omitted] to the excesses of the English Court of Star Chamber, [footnote omitted] and to the French monarchy's abuse of the *lettre de cachet*. [Footnote omitted] All of these institutions obviously symbolized a menace to liberty.  In the hands of despotic groups each of them had become an instrument for the suppression of political and religious heresies in ruthless disregard of the right of an accused to a fair trial.  Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, [footnote omitted] the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution.  The knowledge that every  criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.

333 U.S. at 268-70.  *See also In re Rosahn*, 671 F.2d 690 (2d Cir. 1982) (vacating contempt citation because of improper closure of contempt proceeding);  *In re Fula*, 672 F.2d 279, 283 (2d Cir. 1982) (same); *In re Grand Jury Matter*, 906 F.2d 78 (3d Cir. 1990) (same).

Accordingly, Fed. R. Crim. P. 6(e)(5) has an important limitation to its secrecy requirements: "Subject to any right to an open hearing in contempt proceedings, the court shall order a hearing on matters affecting a grand jury proceeding to be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury." The 1983 Advisory Committee notes to this rule explain that this language was included because of concerns about the First Amendment right to public access and to the Fifth and Sixth Amendment rights of the person found in contempt. *See In Re Grand Jury Matter*, 906 F.2d at 86.

To be sure, because the civil contempt proceeding for a recalcitrant witness is protected not by the Sixth Amendment's public trial provision, but by the Due Process Clause of the Fifth Amendment, a witness can waive an objection to the closure of the contempt proceedings by not objecting. *Levine v. United States,* 362 U.S. 610 (1960). However, even here, closure is not appropriate where there is a public interest in keeping the proceedings open:

> This is not a case where it is or could be charged that the judge deliberately enforced secrecy in order to be free of the safeguards of the public's scrutiny; nor is it urged that publicity would in the slightest have affected the conduct of the proceedings or their result. Nor are we dealing with a situation

13

> where prejudice, attributable to secrecy, is found to be
> sufficiently impressive to render irrelevant failure to make a
> timely objection at proceedings like these.

362 U.S. at 619.

In contrast, this is an instance where public scrutiny is needed to ensure that First Amendment rights are not being abused. In response to damage at a federal courthouse, federal law enforcement agents burst into private homes and searched for "anti-government" literature. There have been public allegations that the grand jury is being used as a tool of harassment, and that the FBI was surveilling anarchists in the Pacific Northwest before windows were broken in downtown Seattle on May 1, 2012. Internationally, media accounts have compared the jailing of the recalcitrant witnesses to the incarceration in Russia of Pussy Riot members. J. Slattery, "America's Pussy Riot," *Al Jazeera*, Oct. 19, 2012. Armed guards and locked doors prevented supporters of the witnesses to enter the courtroom during the portions of the contempt hearings that were supposed to be open to the public. App. J. When the press attempted to litigate the issue of public access, the pleadings connected to that litigation itself were sealed and kept from public view.

Given these allegations, the public needs reassurance:

14

As for the historical need for secrecy to protect the grand jury from the Crown, the dynamics of modern federal prosecutions are different, with many citizens regarding the grand jury as weapon of the government rather than a shield from it. Shining some sunlight on the instant dispute reassures the public that someone is watching the watchers, [footnote omitted] and that this district's federal prosecutors are part of the solution, not part of the problem.

*In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. 570, 575-76 (W.D. Wisc.  2007).[4]

Accordingly, under both the common law right of access to judicial documents and the First Amendment, the public, including the press, had the right to access the court files regarding the contempt citations related to Matthew Duran and Katherine Olejnik and their motions to quash the subpoenas, the transcripts of the contempt hearings, any briefing by the attorneys for the witnesses,[5] the electronic dockets on ECF/PACER, and briefing related to the motion to unseal these proceedings.

---

[4]     The omitted footnote reads:

*"Qui custodiet ipsos custodes?"* -- Juvenal's Satires.

246 F.R.D. at 576 n.2.

[5]     Fed. R. Crim. P.  6 does not impose any secrecy requirements on witnesses or their attorneys, and nothing in the rules require briefing on behalf of recalcitrant witnesses to be kept secret.

15

### ii.     Selective Redaction is the Remedy

The district court agreed that the public had the right to access to material related to the contempt proceedings that did not contain grand jury information.  Order at 7-8.  The court therefore ordered that Petitioner could order the transcripts of the proceedings.  Order at 12.  Yet, the district court refused to unseal the files (or even the court docket) and redact the sensitive matters that are secret under Fed.R.Crim.Proc. 6(e).  While recognizing that the files could be selectively redacted, the district court concluded that selective redaction would create an "incomplete" court file that would "as likely mislead the public as to enlighten it."  Order at 11.

Thus, the district court's conclusion, with all due respect, is based upon a suspicion of the public's understanding of the law, and implies that the public is  simply unable to understand the secret nature of the proceedings and how to read a redacted file.  This distrust of members of the public (which would include attorneys, reporters, and others well familiar with how to read court files, even those that are selectively redacted) is antithetical to the purposes of the First Amendment and the common law right of access to judicial documents.

16

On a practical level, the district court's order shields from the public much information that is not subject to the secrecy requirements of Fed. R. Crim. P. 6. Thus, Mr. Duran's and Ms. Olejnik's motions to quash the subpoenas, filed before their appearance before the grand jury, are still sealed, even though none of these documents could possibly contain references to the questions they were asked by the grand jury. The witnesses' briefing related to the contempt hearings, which the district court recognized was not subject to Fed. R. Crim. P. 6, is not accessible by the public, and even the pleadings related to the litigation over unsealing is still not accessible to the public.[6] Finally, the cases are not listed on ECF/PACER, so members of the public still can not even find out the general procedural history of the cases. Thus, ordinary members of the public who do not have the same access to legal counsel that newspaper have cannot find out the names of the court reporters and the dates of the

---

[6]     Notably, in the parallel motion to unseal the search warrant affidavit, Magistrate Judge Mary Alice Theiler's Report and Recommendation (12-MJ-534) noted that the Government had failed to provide any justification to keep its briefing under seal (App D at p.12 n.4). Judge Jones approved this report, so it is puzzling why he came to a different conclusion here and allowed the Government to keep secret its attempts to keep these files sealed.

contempt hearings so they could even attempt to order the transcripts of the contempt hearings.

Practically, it is not difficult for a court to unseal files and order appropriate redactions -- for instance, to order that the docket be unsealed, but that any information referring to secret matters be redacted from public viewing, or to have the Government determine which pages of its briefing should be redacted.  For instance, in a case involving a witness in the so-called "Whitewater" scandal, Susan McDougal, the 8th Circuit specifically directed:

> OIC [Office of Independent Counsel], working with our Clerk of Court, to substitute for our current sealed file a public file, redacted to exclude portions of the record that disclose substantive grand jury proceedings, supplemented by a filing under seal that contains all redacted portions of the briefs and record on appeal. After an unsealed public file has been created in this fashion, counsel for McDougal may challenge by motion OIC's decision as to the portions of our file which should remain under seal.

*In re Grand Jury Subpoena (Susan McDougal)*, 97 F.3d 1090, 1095 (8th Cir. 1996).  Years later, Ms. McDougal complained that the clerk's office in the district court had in fact sealed too much and again asked for the file to be unsealed, the 8th Circuit rejected her arguments:

18

> McDougal claims that the clerk of court has sealed the entire
> file, or at least more than Judge Wright or this court ordered.
> Based on the record it appears that neither the district court nor
> this court intended to seal the entire record related to the civil
> contempt proceeding.  The sealed docket for Whitewater grand
> jury case number 96-0003 designates relatively few documents
> as "under seal" or "sealed."  Instead, the majority lack a
> designation or are classified as "public access."  It nevertheless
> appears that all or at least most of the documents have been
> placed under seal.  McDougal did not, however, request the
> district court to undertake an in camera review of the sealed
> record to determine if any materials were sealed in error and
> should be made accessible or if all must remain under seal.
> That would have been the appropriate place to initiate such a
> request rather than in the court of appeals.

*United States v.  McDougal*, 559 F.3d 837, 841 (8th Cir.  2009).  *See also In re Grand Jury Proceedings, CF*, No.  09-3938 (8th Cir.  2/25/10 & 3/31/10) (unpublished) (involving grand jury recalcitrant witness appeal where the court ordered that the file be partially opened to the public -- "We therefore grant Regan's motion and direct the government to submit proposed redactions to the district court within twenty one days. We also remand this matter to the district court for it to oversee the redaction process and rule on the government's proposals as well as any objections by Regan and petitioner.") & *In the Matter of the Appearance and Testimony of a Grand Jury Witness*, 3:09mc0004 (S.D. Iowa, 3/19/10) (unpublished) (App.  K).

19

In fact, as noted above, when ordering that a sealed search warrant affidavit be unsealed, Judge Jones specifically approved of a procedure by which the Government proposed redactions of the unsealed document. *In re Search Warrant Issued on October 3, 2012*, Western District No. 12-MJ-534 (App. D). The district court's own orders in a parallel case demonstrates that selected redactions is a workable way of balancing the need for secrecy in grand jury matters and the public's right to know what has taken place in cases of intense public interest.

In the search warrant case, not only did the district court properly place the burden of narrow redaction on the government, that is what the Western District of Washington's Local Rules require, in accord with the predominant practice in most districts around the country. Western District of Washington Local Civil Rule 5(g) provides in part

> There is a strong presumption of public access to the court's files. This rule applies in all instances where a party seeks to overcome the policy and the presumption by filing a document under seal.
>
> (1) A party must explore all alternatives to filing a document under seal. . . .
>
> . . .

20

(5) Only in rare circumstances should a party file a motion, opposition, or reply under seal. A party who cannot avoid including confidential information in a motion, opposition, or reply must follow this procedure:

(A) the party shall redact the confidential information from the motion, opposition, or reply and publicly file the redacted motion, opposition, or reply; and

(B) the party shall file the unredacted motion, opposition, or reply under seal, accompanied by a motion or stipulated motion to seal the unredacted motion, opposition, or reply in compliance with part (3) above.

This general policy puts the burden on the party who seeks to shield information from the public to redact the document. This is the norm, not the exception, and does not lead to confusion by the public or an undue burden on the party whose job it is to propose redactions.

The district court cited to *In re Sealed Case*, 199 F.3d. 522 (D.C. 2000). However, that case simply upheld a district court's denial of a press request for a generic rule requiring public docketing of *all* ancillary grand jury related matters. Yet, there was, at least, a local rule in the District of Columbia that provided a mechanism of unsealing grand jury matters. D.C. District Local Criminal Rule 6.1 provided:

papers, orders and transcripts of hearings subject to this rule, or portions thereof, may be made public by the court on its own motion or on motion of any person upon a finding that

21

> continued secrecy is not necessary to prevent disclosure of
> matters occurring before the grand jury.

199 F.3d at 524.

The D.C. Circuit believed that this rule allowed the media to request a

redacted public docket in any specific case, which would then allow for the

exercise of discretion on a case-by-case basis where:

> the District Court must duly consider the request and, if it
> denies the request, offer some explanation. The District Court's
> explanation must bear some logical connection to the
> individual request. In other words, it must rest on something
> more than the administrative burdens that justified the denial of
> across-the-board docketing, and it must be more substantial
> than, say, an arguable possibility of leaks.

199 F.3d at 527.

Thus, the district court's concern here about the possible burdens was

misplaced.  It is not uncommon, as the cited cases reflect, to allow for the

partial unsealing of grand jury contempt files and the redaction of key

documents that the Government believes contain grand jury secrets.

Moreover, to the extent the district recognized that the witnesses here

are free to share their briefing, it does not make any sense, given their

consent, to continue to seal *their* briefing from the public.  In fact, this Court

recently noted the 3d Circuit decision relied upon by the district court,

22

*United States v. Smith*, 123 F.3d 140 (3d Cir. 1997), and distinguished it on

the basis that once "secret" materials are in the hands of third persons, there

no longer is an interest in secrecy:

> In *United States v. Smith*, after the government publicly
> released a sentencing memorandum that contained allegations
> of criminal conduct against uncharged individuals, the district
> court sealed the sentencing memorandum and denied a motion
> by various newspapers for access to the sentencing
> memorandum and the sealed briefs. 123 F.3d 140, 143, 145 (3d
> Cir. 1997). Consistent with our disposition of this case, the
> Third Circuit held that a motion by newspapers to access the
> released sentencing memorandum was moot because the
> newspapers "already possess[ed] it," and rejected the
> newspapers' claim to access the briefs because such access
> would "disclose additional confidential material." *Id.* at 146,
> 154. The court added, however, that "[e]ven if the
> dissemination by members of the public continues," an order
> barring further disclosure of the material in the sentencing
> memorandum "will at least narrow that dissemination." *Id.* at
> 155. This statement is dictum and does not undermine our
> commonsense conclusion that once a fact is widely available to
> the public, a court cannot grant any "effective relief" to a
> person seeking to keep that fact a secret. We doubt, because of
> the information's availability on the internet, that enjoining
> further disclosure by the parties will "narrow [any further]
> dissemination."

*Doe v. Reed*, 697 F.3d 1235, 1239-40 (9th Cir. 2012). Because the district

court's Order in these cases recognized that any grand jury secrets in the

hands of third parties (i.e. the witnesses, their attorneys) can be freely

disseminated, the argument for continued secrecy loses force and thus further secrecy is not required.

Accordingly, the district court's ruling rejecting selective redaction was clearly erroneous and warrants mandamus relief.

### 7.    CONCLUSION

The district court's decision to unseal the transcripts of the two contempt hearings solely for a newspaper is imperfect relief.  The public will not be confused by selective redaction, but instead, by opening up non-secret portions of the record of grand jury cases to the public, the public will have a greater understanding of how their legal system works, and, perhaps, greater respect for the Rule of Law.  There has been tremendous public attention to the allegations that anarchists damaged property in downtown Seattle, including a federal courthouse.  Given this attention to the grand jury proceedings in these cases, this Court should issue a writ of mandamus to the district court to unseal the files (including the ECF docket, the briefing and transcripts) in the Olejnik and Duran cases, and order the Government to propose redactions.

24

Dated this 22nd day of March 2013.

Respectfully submitted,

/s/ Neil M. Fox

WSBA NO. 15277
Attorney for Index Newspapers LLC
Law Office of Neil Fox, PLLC
2003 Western Ave. Suite 330
Seattle WA 98121

Telephone: 206-728-5440
Fax:          206-448-2252
e-mail:      nf@neilfoxlaw.com

25

## 8.    <u>STATEMENT OF RELATED CASES</u>

Katherine Olejnik and Matthew Duran filed recalcitrant witness appeals in this Court in the Fall of 2013.  The files are sealed and the docket numbers are not accessible through PACER, although counsel thinks one number is 12-35774.

**9.    <u>CERTIFICATE OF COMPLIANCE</u>**

I certify that this Petition for a Writ of Mandamus complies with

F.R.A.P. 21 and 32(c)(2), and Circuit Rules 21-1 and 21-2.

I further certify that the within Petition is proportionately spaced, has

a typeface of 14 points, and contains 5271 words (not including the

corporate disclosure statement, tables, statement of related cases and this

certificate).

/s/ Neil M.  Fox
WSBA NO. 15277
Attorney for Index Newspapers LLC
Law Office of Neil Fox, PLLC
2003 Western Ave. Suite 330
Seattle WA 98121

Telephone: 206-728-5440
Fax:        206-448-2252
e-mail:    nf@neilfoxlaw.com
